UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

    v.

DAVID GOMEZ-CEGARRA,

              Defendant.

_____

**25-CR-208-LJV**

**SENTENCING MEMORANDUM**

**<u>INTRODUCTION</u>**

Mr. Gomez-Cegarra appears before this Court with no criminal history and having played

a limited role in the offense. Given these facts, together with the applicable sentencing

guidelines, an 18-month-sentence is sufficient, without being greater than necessary to achieve

sentencing goals.

**<u>PROCEDURAL HISTORY</u>**

The government charged Mr. Gomez-Cegarra by criminal complaint with one-count of

conspiracy to commit bank robbery in violation of statutes 18 U.S.C. §§ 371 and 2113(b). Dkt.1.

He had a single co-defendant—Jesus Segundo Hernandez-Gil—whose case was later dismissed

on the government's motion. *U.S. v. Cegarra et al*, 25-mj-5055-MJR, ECF No. 33.

Following several adjournments of the Fed. R. Crim. P. Rule 48(b) date, Mr. Gomez-

Cegarra waived indictment and pleaded guilty to a one-count information charging a violation of

18 U.S.C. § 2113(b). Dkts.41, 42, 43. Pursuant to the plea agreement, the parties calculated a

1

guideline sentence as 18 to 24 months and agreed not to request a sentence outside of that. Dkt.43 at ¶12.

The Presentence Report calculated the guidelines the same as the parties. Neither side objected. This sentencing follows.

## ARGUMENT

Preliminarily, the parties agree about the applicable guidelines and enhancements. Both the plea agreement and the PSR calculate the recommended sentence to be 18 to 24 months. At sentencing, Mr. Gomez-Cegarra will have served about 17½ months. Consistent with the plea agreement, Mr. Cegarra respectfully requests that this Court impose an 18-month sentence.

While the offense and relevant conduct resulted in approximately $295,000 in losses, Mr. Gomez-Cegarra is not solely responsible for that. He was part of a group that committed this offense. The complaint alone suggests at least five other individuals were involved, and this case initially had a co-defendant.

Amongst this group, Mr. Gomez-Cegarra did not play a large role in the offense. This offense—ATM jackpotting—was driven by sophisticated technology. In jackpotting, threat actors use a custom computer to physically connect to ATMs and install a specific malware program. That malware allows for remote control of the ATM. Once the computer is properly hooked up to the ATM, someone uses the malware to induce the ATM to dispense cash without valid withdraws.

Law enforcement recognizes this as a sophisticated crime. *See* United States Secret Service, *Secret Service Warns of Sophisticated ATM Jackpotting Attack* (Jan. 26. 2018), available at https://www.secretservice.gov/newsroom/releases/2018/01/secret-service-warns-sophisticated-atm-jackpotting-attack (describing ATM as a "sophisticated crime."). Likewise, the

2

government and probation both believe that the sophisticated means enhancement under USSG § 2B1.1(b)(10(C) applies.

Without expertise, this offense cannot occur. Expertise is needed to code the malware. Expertise is needed to construct the custom computer. Expertise is needed to find a compatible ATM, meaning an ATM that the computer can physically connect to, an ATM whose connection ports can be physically accessed, and an ATM whose operating system and digital security features can be overcome with the malware. And expertise is needed to operate the software once installed.

Mr. Gomez-Cegarra lacks that expertise. He did not graduate high school, and he never received any training, formal or informal, in coding or computers. Beyond an everyday smartphone fluency, he has no computer skills and knowledge. Put simply, he does not have the skills necessary to play a driving role in the offense.

Rather, his role was to follow instructions. At first, he was simply a lookout, and he did not fully understand the nature or purpose of the scheme. But as he participated in more offenses, his instructions changed, and he played a more pronounced role. He drove the car up to the ATM or manually entered transactions into the ATM.

Notably, these roles effectively guaranteed that Mr. Gomez-Cegarra's actions would be caught on the ATM's (or surveillance) cameras, thereby increasing his personal risk. The fact that Mr. Gomez-Cegarra was chosen for these tasks, as opposed to others who were more removed from security cameras, demonstrates his relative lack of power within the group. This does not absolve Mr. Gomez-Cegarra, and he has accepted responsibility for his role by pleading guilty. Still, his role within the broader scheme supports a minimum guidelines sentence.

A lengthy prison sentence will do little to serve sentencing's goals. Mr. Gomez-Cegarra lacks legal status, and he anticipates being deported following the sentence. Expulsion from the United States and the inability to secure lawful status in the future has a punitive element because Mr. Gomez-Cegarra will not be able to access the benefits that come from living in the United States. This additional punishment further justifies a low-end guideline sentence.

Mr. Gomez-Cegarra's imminent deportation means that prison, beyond the minimum guideline will have diminishing returns. As soon as the sentence expires, Mr. Gomez-Cegarra will be gone (although he will likely spend about another month in custody during that process). It makes little sense to have United States taxpayers finance such a temporary extension of Mr. Gomez-Cegarra's time in the United States, especially since any alleged benefits of that incarceration will not be reaped by U.S. taxpayers.

Mr. Gomez-Cegarra's limited criminal history also supports a minimum guideline sentence. This is his first criminal conviction. A lengthy sentence is not needed to deter any future crimes because he has not previously had rehabilitative or deterrent benefits of a prison sentence.

The time that Mr. Gomez-Cegarra has spent in presentence confinement has also been difficult. He has limited contact with his family. Jails were difficult because he is not fluent in English and has moved jails several times. He started off at the Erie County Holding Center but was eventually moved to Orleans County Jail, where his isolation became more pronounced.

Mental health issues also emerged during pretrial detention. Before his time in jail, Mr. Gomez-Cegarra had not experienced mental health issues. While at the Erie County Holding Center, he reported some auditory hallucinations. These mental health issues did not rise to the level of competence concerns. Still, stress—including from this case and the pretrial

incarceration—contributed to these symptoms. Ultimately, Mr. Gomez-Cegarra successfully addressed these issues through a combination of counseling and medication.

After this sentence, Mr. Gomez-Cegarra will be able to lead a law-abiding life. In his conversations with counsel, Mr. Gomez-Cegarra is a respectful young man. He values sincere and direct communication, and he does his best to offer it in return. He misses his family deeply, and he looks forward to being closer to them, especially to his children and parents. He has also spent the last decade or so in a relationship with the same woman, who is the mother of his two children. She does not have any criminal history and works a stable job. She serves as a stabilizing influence on Mr. Gomez-Cegarra. He does not have any major drug or alcohol issues. It is easy to see him building a successful life. It will require him to make changes, especially regarding who he spends his time with, but his time in custody and future deportation have begun that process already.

For these reasons, Mr. Gomez-Cegarra requests that the Court impose an 18-month sentence.

**DATED**:                    Buffalo, New York, March 23, 2026.

                                                    Respectfully submitted,

                                                    **/s/  John J. Morrissey**
                                                    John J. Morrissey
                                                    Assistant Federal Public Defender
                                                    Federal Public Defender's Office
                                                    300 Pearl Street, Suite 200
                                                    Buffalo, New York 14202
                                                    (716) 551-3341, (716) 551-3346 (Fax)
                                                    John_Morrissey@fd.org
                                                    Counsel for Defendant David Gomez-Cegarra

**TO:**    Jeffrey Intravatola
          Assistant United States Attorney